UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
**NIAMKE KEYS,**                        )
    Plaintiff,      )
                                        )
    v.              )       Civil Action No. 01-2619 (RCL)
                                        )
**WASHINGTON METROPOLITAN**             )
**AREA TRANSIT AUTHORITY,**             )
    Defendant.      )
                                        )
_____)

## MEMORANDUM

### I.    BACKGROUND

In this Title VII employment discrimination case, plaintiff Niamke Keys alleges that defendant Washington Metropolitan Area Transit Authority (WMATA) discriminated against her on the basis of her gender and created a hostile work environment on the basis of her gender. The case proceeded to trial, and the Court empaneled a jury on February 23, 2011. During the brief course of the trial, plaintiff and her counsel repeatedly violated this Court's Pretrial Order [172] and Judge Leon's Orders in the case.[1] Plaintiff testified about the following topics, which violated the following court orders: (1) defendant's failure to promote plaintiff, in violation of the Court's Pretrial Order [172] that plaintiff could not introduce evidence of discrete acts of discrimination that she did not administratively exhaust, (2) a physical assault at the workplace, in violation of the same, (3) unwanted sexual advances at the workplace, in violation of the same and Judge Leon's Orders [156, 166] that plaintiff could not introduce evidence that does not

---

[1] This case was previously assigned to Judge Leon but was subsequently reassigned by consent to this Court on November 3, 2010 [168]. This Court held that it would "adhere to the prior rulings in this case made by Judge Leon" [172].

concern the three alleged discriminating officials, and (4) findings of an investigation conducted by WMATA's Office of Civil Rights (OCR), in violation of Judge Leon's minute order dated September 24, 2007, Judge Leon's Order [166] that plaintiff could not introduce evidence that pertains to the Office of Civil Rights' investigation, and this Court's Pretrial Order [172].

Plaintiff's violation of the orders excluding evidence of the OCR investigation was the most egregious. Multiple court orders, issued over the course of several years, prohibited plaintiff from introducing such evidence. On October 5, 2006, defendant moved *in limine* "to prevent plaintiff, her counsel or her witnesses to present any evidence, to refer to, or to mention in any way, any findings by WMATA's internal Office of Civil Rights in regard to a discrete act of discrimination involving plaintiff Keys, which was the subject of an internal complaint of discrimination or to refer to any follow-up regarding these findings" [113]. On September 24, 2007, Judge Leon granted this motion by minute order. On April 25, 2008, plaintiff moved to reconsider this order [142], and on September 19, 2008, Judge Leon denied the motion for reconsideration [156]. At a May 13, 2010, evidentiary hearing, Judge Leon stated in reference to the EEOC and Office of Civil Rights investigations: "I am not going to let this be turned into a trial about the investigation that was conducted and the quality of the investigation and any allegation that you believe is out there about failure to investigate because I don't believe that's what this case is supposed to be about." Tr. 97:12–25 [165]. Despite these orders, plaintiff still listed exhibits that dealt with EEOC and OCR investigations. On August 9, 2010, defendant filed a motion *in limine* to exclude those exhibits on which plaintiff continued to rely, including "correspondence with the EEOC or the Office of Civil Rights, as well as their investigations, findings, interviews and memos" [163]. On September 24, 2010, Judge Leon granted the part of the motion requesting this relief, excluding "exhibits that pertain to the EEOC or Office of Civil

2

Rights' investigation" [166]. On February 15, 2011, this Court's Pretrial Order reiterated Judge Leon's rulings, finding that Judge Leon "sustained WMATA's objection to . . . exhibits that pertain to the EEOC or Office of Civil Rights' investigation," and clarifying exactly which exhibits were excluded by Judge Leon's rulings [172].

Despite this lengthy history of motions and orders, plaintiff advised the jury of the OCR findings in her favor. That testimony left the Court dumbfounded. The Court sustained defendant's objection to the testimony and then attempted to take corrective action to avoid a mistrial. The Court tried to provide a curative instruction to the jury, explaining that the jury should ignore that testimony because it is the jury's role to review the facts of the case *de novo*, so the results of an administrative finding should not play into that determination. The Court then admonished plaintiff and her counsel in front of the jury, instructing counsel to tell his client what she could and could not testify about. Whether this corrective action could ultimately have been sufficient to cure this egregious violation is questionable at best. How does a juror ever put out of their mind that there was an administrative agency finding of discrimination?

At the close of the direct examination of plaintiff on February 23, the Court entertained defendant's motion for a mistrial. The Court reserved its ruling on the mistrial, but warned plaintiff and her counsel—as it had throughout the day after specific violations of court orders—that plaintiff's testimony could not go beyond the scope permitted by court orders.

On February 24, during her re-direct examination, plaintiff testified that she had been physically assaulted at the workplace, in express violation of court orders. The Court sustained defendant's objection to that testimony, instructing plaintiff not to use the word "assault," because she had not made any claim for assault. Plaintiff's counsel said that he would ask a question to clarify the situation, but he only worsened the situation. Counsel asked plaintiff if she

3

had been assaulted at the workplace, and plaintiff said that she had been assaulted by her supervisor. When the Court later asked plaintiff's counsel why he sought to introduce this testimony, he argued that defendant had opened the door to the use of such testimony during the cross-examination of plaintiff. The Court told counsel that if he really believed that, he should have approached the Court and asked for permission to use this testimony. It is clear to the Court that counsel did not approach the bench about this testimony because he knew that the Court would not allow him to use this testimony. This showed counsel's bad faith and was the final straw.

Soon after the "physical assault" testimony, defendant renewed its motion for a mistrial. The Court granted that motion, declared a mistrial, and dismissed the jury. The Court denied defendant's motion for reconsideration of its ruling on the mistrial. On the Court's own motion, with the support of defendant, and after argument, the Court then dismissed plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order.[2] The Court issues this Memorandum in support of its oral order dismissing this case.

## II. DISCUSSION

Federal Rule of Civil Procedure 41(b) provides in relevant part: "If the plaintiff fails to . . . comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." Such a dismissal "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). "[A]n involuntary dismissal pursuant to Rule 41(b) is with prejudice unless otherwise indicated in the dismissal order." *Jones v. Horne*, No. 09-5128, 2011 WL 476623, at *10 (D.C. Cir. Feb. 11, 2011).

---

[2] The Court may dismiss the action *sua sponte*. *Jones v. Horne*, No. 09-5128, 2011 WL 476623, at *10 (D.C. Cir. Feb. 11, 2011), quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2372 (3d ed. 2010) ("[T]he district court may dismiss a complaint on its own motion for want of prosecution or for failure to comply with a court order.").

"[U]nder certain circumstances, dismissal may be an unduly severe sanction for a single episode of misconduct. A district court may dismiss under Rule 41(b) only after less dire alternatives have been explored without success." *Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000). The Court finds that in this case, dismissal is an appropriate sanction, particularly because plaintiff has violated court orders numerous times and the Court has explored less dire alternatives without success.

The D.C. Circuit has held that there are several justifications for dismissal of a case on the basis of attorney misconduct. Specifically, the Circuit has held:

> There are three basic justifications for dismissal because of attorney misconduct: (1) prejudice to the other party; (2) failure of alternative sanctions to mitigate the severe burden that the misconduct has placed on the judicial system; and (3) deterrence of future misconduct. These justifications are not easily met. Prejudice, for instance, must be so severe as to make it unfair to require the other party to proceed with the case. Similarly, a malfeasant party places a severe burden on the judicial system if the court is required to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of their cases. The final rationale, deterrence, justifies dismissals when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications.

*Id.* at 1309 (citations and internal quotations omitted). The Court finds that these justifications are equally applicable here and may warrant dismissal when the misconduct in question is by a party as well as by an attorney.

Applying these criteria, the Court finds that dismissal is justified here. First, the Court finds that defendant has suffered significant prejudice. Despite Judge Leon's Orders and this Court's Pretrial Order specifically excluding certain types of testimony, plaintiff and her attorney have repeatedly insisted on bringing that inadmissible testimony to the attention of the jury. For example, the Court ordered that plaintiff could not discuss any discrete acts of discrimination that she did not administratively exhaust, including her allegations of unwanted sexual advances or physical assaults at the workplace. Despite this order, plaintiff inserted descriptions of such

5

events into her testimony, placing them squarely before the jury. Plaintiff's counsel even had the gall to directly ask plaintiff about her workplace physical assault. This testimony is highly and unfairly prejudicial to defendant. The Court holds that due to the repetitive and cumulative nature of the improper testimony, the jury has been tainted, and it would therefore be unfair to require defendant to continue in this matter.

Second, the Court finds that alternative sanctions cannot mitigate the severe burden that the misconduct has placed on the judicial system. During the direct examination of plaintiff, the Court sustained defendant's objections to the testimony and told plaintiff that the Court wanted to avoid a mistrial. The Court then gave plaintiff a severe reprimand, informing her that she could only testify within the bounds established by previous orders in this case. To reinforce that reprimand, the Court instructed plaintiff's counsel to have a private discussion with plaintiff, in which counsel could tell plaintiff exactly what she was permitted to testify about. After that discussion, plaintiff at first appeared to try to keep her testimony within the bounds permitted by court orders. At the end of plaintiff's direct examination, defendant moved for a mistrial, on which the Court reserved judgment, making clear that it wanted to see whether cross-examination could cure any prejudice. But shortly after the start of plaintiff's re-direct examination, she expressly talked about a physical assault at the workplace, led on by plaintiff's counsel. This testimony was in violation of the Court's prior orders and was highly prejudicial. The Court declared a mistrial soon after that testimony. Thus, the alternative sanctions that the Court attempted—including reprimanding both the plaintiff and plaintiff's lawyer during her testimony, warning her of the possibility of a mistrial, and granting a mistrial—were unsuccessful. The Court finds that no alternative sanctions would allow defendant to have a fair trial.

Third, the Court finds that dismissal is necessary to deter future misconduct. The D.C. Circuit has provided guidance for when the deterrence rationale is appropriate. When a party or attorney (1) fails to comply with a court order more than once, (2) acts in bad faith, and (3) has been provided warning by the Court of the consequences of such violation, then dismissal may be appropriate. *Id.* at 1309. Plaintiff and her counsel meet these criteria. First, plaintiff and her counsel failed to comply with court orders numerous times. After the first instance of non-compliance, the Court simply sustained an objection to the testimony. The Court then ordered plaintiff to testify in accordance with the Court's orders. But she did not. She repeatedly discussed inadmissible subjects and thus repeatedly failed to comply with court orders. Second, the Court finds that plaintiff and her counsel acted in bad faith. This constitutes "calculated, deliberate disregard of the court's authority and the force of its orders." *Martin-Trigona v. Gellis & Mellinger*, 830 F.2d 367, 369 (D.C. Cir. 1987). The Court's Pretrial Order spelled out precisely what topics were admissible. Counsel was well aware of what plaintiff could discuss. He should have consulted with his client about these topics, but even if he irresponsibly did not do so before trial, the Court gave him an opportunity to do so during trial. Because counsel and plaintiff knew exactly what they were allowed to discuss, any such improper discussion could only have been conducted in bad faith. The Court cannot accept counsel's professed justification that he understood the Pretrial Order to bar exhibits but not testimony related to the excluded topics, particularly in light of Judge Leon's September 24, 2007, minute order granting defendant's motion *in limine* to prevent plaintiff and her counsel from "present[ing] any evidence, [ ] refer[ring] to, or [ ] mention[ing] in any way, any findings by WMATA's internal Office of Civil Rights in regard to a discrete act of discrimination involving plaintiff Keys" [113]. And as the Court stated above, the Court is convinced that counsel was acting in bad faith

when he failed to approach the Court to ask permission to use plaintiff's physical assault testimony. The Court rejects the claim of plaintiff's counsel that defense counsel opened the door to his bringing out plaintiff's testimony that she had suffered a physical assault. Counsel knew that the Court would deny him permission to use the assault testimony, but he asked plaintiff about the assault anyway, in the presence of the jury, and elicited her response that a supervisor had physically assaulted her. Third, the Court finds that plaintiff and her counsel were provided warning by the Court of the consequences of such violation. The Court warned them of the possibility of a mistrial and told them multiple times that they had to comply with court orders.

The Court will not tolerate such deliberate flaunting of its orders. As the D.C. Circuit held, "If the court is to discharge its function, its orders must be obeyed. When a party deliberately refused to comply with an order, and persists in such refusal in the face of impending dismissal, the court has no choice but to use the remedy provided by Rule 41(b) to dismiss." *Id.* at 369.

### III. CONCLUSION

Accordingly, this case will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for repeatedly failing to comply with court orders.

A separate order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on February 25, 2011.